COMMONWEALTH of Pennsylvania, Appellant

v.

John SMITH, Appellee.

Superior Court of Pennsylvania.

Argued April 1, 2009.

Filed Aug. 10, 2009.

Karen B. Jordan, Asst. Dist. Atty., Philadelphia, for the Com., appellant.

Lori Mach, Public defender, Philadelphia, for appellee.

BEFORE: STEVENS, KLEIN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 The Commonwealth appeals from an order granting a motion to suppress drugs found during a search incident to arrest after undercover narcotics police observed Appellee, John Smith,[1] in a suspicious street transaction. The suppression court concluded that the police lacked probable cause to arrest even though a trained, experienced narcotics officer saw Appellee hand over an object from his sock in exchange for money, and leave the area when a third party alerted him to the presence of strangers. We reverse.

¶ 2 On October 25, 2006, at about 2:40 PM, plainclothes narcotics officers Riley and Ricciardi were traveling northbound on 12th Street near Lindley Avenue, in an unmarked vehicle when they observed Appellee, an African–American, accept money from another unidentified African–American male, remove a small unknown item from his sock, and hand it to the other

man. (N.T. Motion Hearing, 2/5/08, at 6). The officers got out of their car and walked to an alley at 11th and Lindley, 75 to 100 feet away from Appellee, to set up a surveillance. However, the surveillance was thwarted when an unknown third African American male announced "a white boy just went into the alleyway."[2] (*Id.* at 7). Appellee walked around the 1100 block of Lindley, looked into the alley at the officers through a "breezeway,"—a vacant lot where a house had been torn down— and continued walking. Officer Riley ordered uniformed back-up officers to arrest Appellee. During a search incident to arrest, the officers found nineteen packets containing crack cocaine in Appellee's socks, one clear jar with a green lid containing marijuana in his pants pocket, and $303.

¶ 3 At the suppression hearing, Officer Riley testified that he had been a Philadelphia police officer for thirteen years, eight of them in the Narcotics Strike Force, and had participated in "thousands" of narcotics arrests and surveillances. (*Id.* at 9). He testified that he had previously conducted fifty to seventy-five surveillances in the area of the incident. (*Id.* at 10). He further testified that the transaction involving Appellee was identical to numerous exchanges he had previously witnessed on surveillance for narcotics. (*Id.*). He characterized the neighborhood where Appellee was arrested as "a residential, high crime, very high shooting area . . . [and] a high drug area" with "[a] lot of hard violence." (*Id.* at 11).

¶ 4 The court granted the motion to suppress, based on its finding that the

---

1. Appellee is also identified in the record by the following aliases: John I. Smith, John T. Smith, Johnson Smith, and Tyree Smith.

2. There was testimony at the suppression hearing that the neighborhood is "majority black" with a large Asian population, and the two narcotics officers were the only Caucasians in the immediate area. (N.T. Motion Hearing, at 11–12, 15).

arrest lacked probable cause, citing *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007), *cert. denied,* —— U.S. ——, 129 S.Ct. 448, 172 L.Ed.2d 321 (2008), and *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995). The trial court denied the Commonwealth's motion for reconsideration and this timely appeal followed.[3]

¶ 5 The Commonwealth raises one question on appeal:

> DID THE [SUPPRESSION] COURT ERR IN SUPPRESSING [APPELLEE'S] DRUGS ON THE GROUND THAT THERE WAS NO PROBABLE CAUSE TO ARREST, WHERE [APPELLEE], IN A HIGH DRUG–TRAFFICKING AREA, TOOK ITEMS FROM HIS SOCK AND EXCHANGED THEM FOR CASH IN A MANNER CONSISTENT WITH DRUG EXCHANGES PREVIOUSLY WITNESSED BY A HIGHLY EXPERIENCED OFFICER, A LOOKOUT WARNED [APPELLEE] WHEN POLICE ATTEMPTED TO CONDUCT FURTHER SURVEILLANCE, AND [APPELLEE] BEGAN TO LEAVE IN RESPONSE TO THE WARNING?

(Commonwealth's Brief, at 2).

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law,

however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Williamson*, 962 A.2d 1200, 1201 n. 4 (Pa.Super.2008) (quoting *Commonwealth v. Boulware*, 876 A.2d 440, 442 (Pa.Super.2005)).

¶ 6 Both the United States and Pennsylvania Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8.

> To be constitutionally valid, an arrest must be based on probable cause. The existence or non-existence of probable cause is determined by the totality of the circumstances. The totality of the circumstances test requires a Court to determine whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Dunlap, supra* 941 A.2d at 674–75 (citations and internal quotation marks omitted). To determine the existence of probable cause, the Supreme Court in *Dunlap* applied the factors first enunciated in *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973):

> All the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the

**3.** The Commonwealth certified in its notice of appeal that the order will terminate or substantially handicap the prosecution. *See* Pa. R.A.P. 311(d). The Commonwealth has "an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order." *Commonwealth v. Bender*, 811 A.2d 1016, 1017 (Pa.Super.2002) (citation omitted).

place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important.

*Id.* at 675 (quoting *Lawson, supra* at 394).

■ ¶ 7 The *Dunlap* court continued: [W]e have never formally recognized an officer's training and experience, **without more,** as a factor-in the *Lawson* sense-for purposes of the totality of the circumstances test ... we have utilized officer training and experience as an aid in assessing the *Lawson* factors.... [Thus], probable cause "... is to be **viewed** from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest **guided by his training and experience.**"

*Id.* (quoting *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908, 910 (1974)) (emphases added in *Dunlap*). Despite distinguishing *Lawson* on the facts, the *Dunlap* majority quoted with approval its premise that "every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause...." *Dunlap, supra* at 677 (quoting *Lawson, supra* at 394). It recognized, however, that the holding in *Lawson,* affirming judgments of sentence for drug offenses on a finding of probable cause, "remains viable precedent." *Id.* at 675 n. 2.

■ ¶ 8 This Court has recently noted that:

Questions of probable cause do not entail certainties. Indeed, probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference.... It is important to view all of the facts and the totality of the circumstances in order to avoid rendering a decision that is totally devoid of [the] commonsensical infer-

ences [that are] drawn by trained police officers with regard to drug activity.

*Commonwealth v. El,* 933 A.2d 657, 661 (Pa.Super.2007) (citations and internal quotation marks omitted), *appeal granted, per curiam* (on issues of *pro se* representation only), 598 Pa. 207, 955 A.2d 1012 (Pa.2008). We also note the observation that "[t]he question whether probable cause exists in a given circumstance is so fact-intensive that well-settled legal principles in themselves offer cold comfort." *Dunlap,* 846 A.2d at 678 (Johnson, J., dissenting).

Under the Fourth Amendment, we have long held that flight alone does not constitute probable cause for an arrest. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973).[ ] Of course, as the Superior Court recently held in *Commonwealth v. Frank,* [407 Pa.Super. 500] 407 Pa.Super. 500, 595 A.2d 1258 ([Pa.Super.] 1991), flight coupled with additional facts that point to guilt may establish probable cause to arrest. *Accord Jeffries, supra,* [ ] 454 Pa. 320, 311 A.2d 914. But the additional facts here do not by themselves point to guilt. We find that mere police observation of an exchange of an unidentified item or items on a public street corner for cash (which alone does not establish probable cause to arrest) cannot be added to, or melded with the fact of flight (which alone does not establish probable cause to arrest) to constitute probable cause to arrest. Such facts, even when considered together, fall **narrowly short** of establishing probable cause.

*Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752, 753 (1995) (internal quotation marks omitted) (emphasis added).

¶ 9 In this case, the defense did not present any witnesses at the hearing on the motion to suppress. (*See* N.T. Motion, at 17). Accordingly, the Commonwealth's

evidence is essentially uncontradicted. *See Williamson, supra.* The suppression court concluded that the issue presented "falls squarely within *Dunlap* and *Commonwealth v. Banks.*" (N.T. Motion, at 26).

¶ 10 In *Dunlap,* the Pennsylvania Supreme Court reaffirmed *Banks,* which held that police observation from a marked vehicle of a single exchange of unidentified item or items on a public street corner for cash, and the fact of flight, even when considered together, "fall narrowly short of establishing probable cause." *Banks, supra* at 753. The Superior Court opinion in *Dunlap* had distinguished *Banks,* largely on the basis of the specialized training and experience of the narcotics officer involved. *Commonwealth v. Dunlap,* 846 A.2d 674, 675 (Pa.Super.2004). On appeal, our Supreme Court, applying the *Lawson* factors, held that probable cause was lacking and the arrest and search were unconstitutional, reversing the conviction. *See Dunlap,* 941 A.2d at 679. While observing that the *Lawson* factors were not intended to be exhaustive, the Supreme Court nevertheless found the absence of police training and experience from the list to be "notable." *Id.* at 675. The Supreme Court added that "a court cannot simply conclude that probable cause existed based upon **nothing more** than the number of years an officer has spent on the force. Rather, the officer must demonstrate a **nexus** between his experience and the search, arrest, or seizure of evidence." *Id.* at 675–76 (emphasis added). Nevertheless, *Dunlap* concedes that "probable cause is a fluid concept, and requires only a showing that criminal activity **may** be reasonably inferred from a set of circumstances and need not be shown to, in fact, exist[.]" *Id.* at 677 (citation omitted) (emphasis in original).

¶ 11 Here, the suppression court, concluding there was no probable cause, granted the motion to suppress, finding that the evidence presented showed "[o]ne simple transaction" of a small unknown item, with no evidence of flight. (N.T. Motion, at 27). In its Rule 1925(a) opinion, the court concluded that "[t]he probable cause in this case boils down to a simple hand to hand transaction of an unknown object on a city street in the middle of the day." (Trial Ct. Op., 10/24/08, at 4). Noting that in *Dunlap,* "a brief transaction with flight was found to be insufficient to create probable cause," the court added "[i]n the present case there was not even flight." (*Id.*).

¶ 12 Therefore, the overarching question in this appeal, per *Dunlap,* is whether the evidence presented by the narcotics officer demonstrated a sufficient nexus between his training and experience and his observation of Appellee's actions to establish probable cause for a warrantless arrest and search incident to that arrest, or whether, as the suppression court concluded, the officer lacked probable cause.

¶ 13 The suppression court made its decision based on three findings, or more accurately, the absence of three findings: first, identification of the item exchanged, specifically, recognized by the officer as narcotics. (*See id.* at 2). This is uncontradicted by the evidence. Secondly, the court found there was insufficient evidence to prove that Appellee was being alerted that police were present when the third party called out "a white boy just went in the alley." (*Id.* at 4). Thirdly, the court concluded there was no flight. (N.T. Motion, at 27); (Trial Ct. Op. at 4).

■■■ ¶ 14 The suppression court's method of analysis, isolating three purported deficiencies in the evidence presented, appears to ignore the "totality of circumstances" test accepted by *Dunlap,*

*supra* at 674, and *Banks, supra* at 753, in favor of a *de facto* piecemeal analysis disfavored by *El, supra* at 660 ("We do not review the evidence piecemeal."). Furthermore, piecemeal analysis shifts the focus of inquiry away from "the facts and circumstances [i] within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, [ ] sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime[.]" *Dunlap,* 941 A.2d at 675 (citation omitted). "It is important to view all of the facts and the totality of the circumstances in order to avoid rendering a decision that is totally devoid of [the] commonsensical inferences [that are] drawn by trained police officers with regard to drug activity." *El, supra* at 661 (quoting *Commonwealth v. Van Wells,* 916 A.2d 1192, 1195 (Pa.Super.2007)).

¶ 15 A review of the suppression court's decision and analysis reveals first that its summary conclusion that "[t]he probable cause in this case boils down to a simple hand to hand transaction of an unknown object on a city street in the middle of the day[,]" (Trial Ct. Op., at 4), is oversimplified and incomplete, if not inaccurate. The narcotics officer observed Appellant remove an object from his sock and hand it over in exchange it for currency in a commercial transaction on a non-commercial street in a high crime area known for its high drug activity. Street location, the use of a street for commercial transactions, and the place where the small items were kept by the seller are all recognized *Lawson* factors. *See Lawson, supra* at 394. Therefore, we cannot conclude that the suppression court's finding was supported by the record.

¶ 16 Probable cause requires only a showing that criminal activity may reasonably be inferred, not that it be shown to exist. *Dunlap,* 941 A.2d at 677. The nexus here is that the officer by virtue of his training and experience, including extensive experience in the immediate area, discerned that the unorthodox transaction he observed raised a reasonable inference that criminal activity was occurring. To ignore the totality of the circumstances the officer observed is to disregard the "commonsensical inferences" noted in *El,* which established probable cause.

¶ 17 Next, the suppression court "found," or more accurately, concluded, that the evidence that an unidentified third party "with no proven association with [Appellee]" shouted out "a white boy just went in the alley" was insufficient to prove Appellee was being alerted that police were present. (Trial Ct. Op., at 4). "While we are not free to substitute our view of the evidence for the factual finding of the trial court, we as an appellate court are authorized, indeed required, to use a plenary scope of review in determining the validity of the legal conclusions made by the trial court." *Commonwealth v. Maerz,* 879 A.2d 1267, 1269 (Pa.Super.2005). Therefore, this Court, as a court of review, is not bound by the suppression court's legal conclusion that a third party's shouted announcement of the arrival of strangers is insufficient to prove someone was alerting Appellee to the presence of police. *See Williamson, supra.*

¶ 18 In any event, lack of definitive evidence as to the status of the man who called—paid lookout or mere volunteer—does not address whether the call out itself, and Appellee's response, were additional factors the narcotics officer could properly consider. The officer, whose length of experience with the drug trade as well as overall time in the police force substantially exceeded that of the officer in *Dunlap,* may have reasonably concluded through the lens of his specialized knowl-

edge that the call out, and Appellee's response in investigating the information, were additional factors in the totality of circumstances to give him probable cause to believe criminal drug activity was afoot.

¶ 19 The final *Lawson* factor is the movements and manners of the parties. The suppression court analyzed this factor exclusively as to whether there was "flight." Finding that "in this case there was not even any indication of flight," (N.T. Hearing, at 27); (Trial Ct. Op. at 4), the court concluded there was no probable cause. However, the *Lawson* factor is broader than flight alone. Even assuming there was no flight, Appellee's continuing to walk away in response to the "white boy" call was an additional factor the officer could consider to form the conclusion from the totality of circumstances that criminal activity was afoot.

¶ 20 Probable cause is to be determined according to a totality of the circumstances test. *See Dunlap, supra.* Here, the experienced narcotics officer observed Appellee's suspicious actions, uncontradicted at the hearing by any other evidence. Interpreting these observations through the lens of his training and experience, including fifty to seventy-five surveillances in the immediate neighborhood, he concluded that criminal drug activity was afoot. This was not a situation where the officer's training and experience was offered as an independent factor to bootstrap an otherwise deficient observation. Rather, in the totality of circumstances, the officer used his training and experience as the nexus for the conclusion that based on his observations there was criminal drug activity afoot and that the police had probable cause to arrest. *See Dunlap, supra* at 676. Accordingly, we reverse the grant of suppression.

¶ 21 Order granting suppression reversed. Case remanded. Panel jurisdiction relinquished.