J-S38043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES REID, | : | |
| | : | |
| Appellant | : | No. 977 EDA 2013 |

Appeal from the Judgment of Sentence Entered March 27, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0006081-2012.

BEFORE:  FORD ELLIOTT, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 25, 2014**

Appellant, James Reid, appeals from the judgment of sentence entered March 27, 2013, following his conviction of one misdemeanor count of possession of a controlled substance.  We are constrained to reverse.

The trial court summarized the facts of the case as follows:

> At the trial for Appellant, Police Officer Stephen Ratka testified that on August 4, 2011, at approximately 10:50 p.m., his tour of duty took him to the area of 1700 Ridge Avenue in the city and county of Philadelphia.  Officer Ratka testified that he and his partner Officer Long, who were assigned to the Narcotics Strike Force, went to the 7900 block of Ridge Avenue to set up surveillance for illegal sales of narcotics.  At that time, Officer Ratka stated that he observed the Appellant, wearing long jeans and a black t-shirt with some sort of white design on the front, standing inside of the Chinese take-out store at the corner of Ridge, Cambridge, and 18th where they all meet.  The entire inside of the store was in the officer's direct view as there is a joint plate glass window that covers the whole side of the store, approximately two feet off the ground and the rest is all

glass maybe 10 to 12 feet wide. The inside of the store was well lit by the street lights[1] and the officer was using binoculars with nothing blocking his view. When Appellant was inside the store he was approached by a black female, later identified as Lorraine Harris, who was wearing red shorts and a white top. The Appellant and Ms. Harris had a conversation inside the store and then at approximately 10:53 p.m. they exited the store. Ms. Harris came out first and stood in front of the store while Appellant followed behind her. Officer Ratka testified at that point he witnessed Appellant drop an object in front of Ms. Harris and then walk slowly northbound up 18th Street. Officer Ratka testified that he then witnessed Ms. Harris, a few seconds later, bend down, pick up the object that Appellant dropped, and then also walk northbound up 18th Street while looking at the object in her right hand. Officer Ratka testified that he believed he had witnessed an illegal narcotics transaction between Appellant and Ms. Harris.

After witnessing that transaction, Officer Ratka radioed a description and direction of both Appellant and Ms. Harris to backup officers. Officer Taven Washington testified that while working as a backup officer to Officer Ratka under narcotics surveillance on that same date and time, he received information from Officer Ratka. Acting on that information, Officer Washington stopped and investigated Ms. Lorraine Harris at the 1600 block of Ridge Street. As of result of the investigation, Officer Washington testified that he recovered from Ms. Harris' coin pocket of her shorts, one clear Ziploc packet containing alleged crack cocaine. It was stipulated at trial that Officer Taylor, another backup officer, had stopped Appellant on the 1600 block of Ridge Avenue and recovered $10 from him.

Trial Court Opinion, 10/9/13, at 2–3 (internal citations to record omitted).

---

[1] There was no testimony that the inside of the store was "well lit by the street lights." The only evidence regarding street lights was Officer Ratka's testimony that "it was dark out, but there's street lights directly on the corner of the Chinese store **where I was sitting**." N.T., 2/12/13, at 13 (emphasis added). While the officer never identified where his vehicle was parked, it was obviously far enough away so that he was not observed while utilizing binoculars. *Id*. at 9, 13.

Police arrested both Appellant and Ms. Harris. Appellant was charged with one misdemeanor count of possession of a controlled substance. On May 16, 2012, Appellant proceeded to trial in the Philadelphia Municipal Court, where he was found guilty and sentenced to twelve months of probation. Appellant then filed a *de novo* appeal to the Philadelphia Court of Common Pleas.

On February 12, 2013,[2] Appellant proceeded to a bench trial and was found guilty of possession of cocaine, a controlled substance. The trial court sentenced Appellant on March 27, 2013, to three years of probation and ordered drug treatment. On April 2, 2013, Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925(b).[3]

---

[2] The notes of testimony for Appellant's bench trial on February 12, 2013, are incorrectly captioned, "Preliminary Hearing Volume I." The cover page and the captioned headings on each page also are incorrectly dated "February 12, 20**12**." The correct date is listed on page one as February 12, 20**13**. We also note with disapproval that Appellant failed to ensure the completion of the record with the inclusion of the notes of testimony for that hearing, compelling this Court and our Prothonotary to search for the trial transcript. "It is the responsibility of an appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." ***Commonwealth v. Griffin***, 65 A.3d 932, 936 (Pa. Super. 2013). While we could have found the issue waived, we have located the missing materials and will address Appellant's claim.

[3] Appellant filed a timely Rule 1925(b) statement on April 30, 2013, and concurrently filed a request to file a supplemental statement. The trial court granted the request and directed counsel to file a supplemental statement within twenty-one days of receipt of the notes of testimony. Appellant timely filed a supplemental statement on September 27, 2013.

Appellant raises the following single issue for our review:

> Was not the evidence insufficient to find appellant James Reid guilty of possession of a controlled substance because it cannot be found beyond a reasonable doubt the packet of cocaine recovered from Lorraine Harris was the item dropped earlier by appellant Reid, especially in light of all the other circumstances equally consistent with innocence?

Appellant's Brief at 3.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119 (Pa. 2013). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. James*, 46 A.3d 776 (Pa. Super. 2012). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). "[I]n applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Ratsamy*, 934 A.2d 1233 (Pa. 2007).

Appellant was convicted of possession of a controlled substance (cocaine) pursuant to 35 P.S. § 780-113(a)(16), which prohibits "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act . . . ." Possession of cocaine, a schedule II drug, is proscribed. 35 P.S. § 780-104 (2)(i)(4).

> Our Supreme Court has said repeatedly that "illegal possession of narcotic drugs is a crime which 'by its very nature is unique to the individual. By definition, the possessor is the only person who could commit the crime. Guilt by association . . . is unacceptable.'" Accordingly, if the Commonwealth is unable to prove the defendant's actual possession of the drugs, it must prove constructive possession. To prove constructive possession the Commonwealth must prove that the defendant had both the power to control the contraband and the intent to exercise that control.

*Commonwealth v. Luddy*, 422 A.2d 601, 605 (Pa. Super. 1980) (internal citations omitted).

Thus, possession may be proven by actual or constructive possession, *Commonwealth v. Johnson*, 26 A.3d 1078, 1093–1094 (Pa. 2011). Since there were no drugs found on Appellant's person, the Commonwealth clearly "could not show actual possession of the contraband." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). We have defined constructive possession as conscious dominion. *Johnson*, 26 A.3d at 1094. "We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control." *Commonwealth v.*

J-S38043-14

*Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243

(Pa. 2013) (internal quotation marks and citation omitted).

Here, the trial court concluded that the evidence was sufficient,

holding as follows:

> [T]he Court reasonably concluded that Appellant had the ability and intent to exercise conscious control and dominion over the contraband that was later recovered on Ms. Harris when only Appellant had access to the same at the relevant time on the evening in question. And based on the totality of the circumstances, the Court found that the object containing the contraband found on Ms. Harris was the object that Appellant dropped and Ms. Harris immediately picked up outside the Chinese store. Therefore, there was sufficient evidence to convict Appellant of possession of a controlled substance.

Trial Court Opinion, 10/9/13, at 6. We disagree.

Appellant argues that his conviction "is premised on the trial court's

incorrect belief" that the packet of crack cocaine found in Ms. Harris's pocket

is the same item Appellant dropped in front of her. Appellant's Brief at 11.

He maintains that such a conclusion is "[n]othing more than forced and

speculative assumptions about the chain of events . . . ." *Id*. Appellant

suggests that this case:

> is not really one about constructive possession. It is, instead, a case of permitting circumstances to connect two events without an evidentiary basis to do so, merely because the possibility exists that the events are related. . . . The court misapplied a constructive possession theory not only because there was little evidence supporting any theory of guilt, but more importantly, by giving weight to undeveloped facts, especially in light of the fact that the Commonwealth chose not to charge [Appellant]

-6-

with delivery of a controlled substance (and never actually made such an argument at trial)(N.T., at 17–20).

Appellant's Brief at 13.

The Commonwealth counters that Appellant asks this Court to "second-guess" the trial court's evaluation of the evidence and to make assumptions that are not supported by the testimony. It maintains that the evidence "clearly supports the conclusion that an illegal narcotics transaction occurred between Appellant and Ms. Harris." Commonwealth's Brief at 5.

We cannot agree that the Commonwealth proved each element of the offense beyond a reasonable doubt. The record does not conclusively establish that Appellant was in actual or constructive possession of a controlled substance, based on the totality of the circumstances.

The record reveals that Officer Ratka, a member of the Narcotics Strike Force, was conducting surveillance "for illegal sales of narcotics" on the 7900[4] block of Ridge Avenue in Philadelphia. N.T., 2/12/13, at 9. There was no testimony at trial regarding the extent of Officer Ratka's experience either as a police officer, in general, or the length of time he has been an officer for the Philadelphia Police Department or a member of the Narcotics

---

[4] The parties refer to the location as the **1700** block of Ridge Avenue without acknowledging the discrepancy with the trial transcript; thus, we are uncertain if it is merely a typographical error. The parties and the notes of testimony are in agreement that the crime scene was located where eighteenth, Cambridge and Ridge Streets "all sort of come together . . . ." N.T., 2/12/13, at 9.

Strike Force. Utilizing ten-by-fifty binoculars, he observed Appellant standing inside a Chinese food take-out store. *Id*. at 9, 13. The store had a "plate glass window that covers almost the whole side of the store, approximately two feet up off the" ground and ten-to-twelve feet wide. *Id*. at 12.

An African-American female "wearing red shorts and a white top," who was later identified as Lorraine Harris, approached Appellant in the store. N.T., 2/12/13, at 9. After a short conversation, Ms. Harris left the store, and stood outside in front of the store. *Id*. at 9–10. Appellant then exited the store and "dropped an object in front of" Ms. Harris and "started to walk slowly up 18th Street northbound." *Id*. at 10. "Ms. Harris bent down, picked the object up and turned and walked northbound also on 18th Street looking at it in her right hand until I lost sight of her . . . ." *Id*. at 10.

When Appellant and Ms. Harris were out of sight, the officer radioed a description of Appellant and Ms. Harris and their location. N.T., 2/12/13, at 11. Philadelphia Police Officer Taven Washington of the Narcotics Strike Force received this report and stopped Ms. Harris on the 1600 block of Ridge Avenue. *Id*. at 15. Officer Washington found one clear Ziploc packet containing seventy-one milligrams of crack cocaine in the coin pocket of Ms. Harris's shorts. *Id*. at 15–16. The parties stipulated that Appellant was stopped on the 1600 Block of Ridge Avenue by Philadelphia Police Officer

Wayne Taylor, who recovered ten dollars from Appellant's person. *Id*. at 14. Officer Ratka testified, "I believe it was an illegal narcotics transaction taking place." *Id*. at 11.

Based on this evidence, it was unreasonable for the trial court to conclude that Appellant possessed the crack cocaine that was found on Lorraine Harris. Moreover, it was not reasonable or prudent for Officer Ratka to conclude that the item he observed Appellant drop was the same item found in Ms. Harris's pocket. Officer Ratka's failure to testify that the object dropped was similar or identical to the one he had observed in the transaction prevents a reasonable inference that it was.

*Commonwealth v. Thompson*, 93 A.3d 478, 486 (Pa. Super. 2014), presents pertinent reasoning to this issue and is also instructive regarding Appellant's claim assailing proof of possession herein.[5] In that case, police engaged in surveillance of a 7–Eleven after receiving complaints of concerned citizens. During surveillance, police observed the appellant approach a white SUV that appeared to be waiting for him and, after a brief conversation, he received cash and began to count it. The appellant then retrieved a plastic baggy from a hiding place next to a fence located nearby and tossed it into the white SUV. The officer testified that he had twenty-

---

[5] While the discussion in *Thompson* initially related to whether police therein had probable cause to arrest the appellant, the sufficiency of the evidence was in question, and the logic is pertinent to the sufficiency of facts leading to a conclusion that a drug transaction is occurring, herein.

three years of experience as a police officer including ten years in narcotics interdiction and had received specialized narcotics training. He further testified that he had been involved in seventy-five to 100 drug arrests within two blocks of the 7–Eleven parking lot, and his observations were consistent with prior narcotics transactions he observed in that area. *Thompson*, 93 A.3d at 485.

In stark contrast, there was no similar testimony in the present case. Officer Ratka never testified regarding either the length or breadth of his experience as a police officer, let alone whether he had any specialized training or experience in narcotics interdiction. There was not an iota of testimony relating either to the choice of location of the surveillance or mention of any concerned citizen complaints in that locale. There was absolutely no testimony that the particular area Officer Ratka was surveilling was a high crime area or that the officer had previous experience in that area. Indeed, *Commonwealth v. Walton*, 63 A.3d 253 (Pa. Super. 2013), a case dismissed as distinguishable in *Thompson*, is factually similar to the case *sub judice*. Distinguishing *Walton*, we stated in *Thompson*: "In that case, the police were not acting on any tip, they could not describe what was exchanged in the transaction, and the events did not transpire in a high crime area." *Thompson*, 93 A.3d at 485. The same is true here, as well.

In **Thompson**, the appellant argued that the jury could not have reasonably inferred that a plastic baggie found in a co-defendant's possession was the same baggie that the appellant therein tossed into the co-defendant's vehicle. In detailing the facts that supported the sufficiency of the evidence in **Thompson**, this Court explained:

> The circumstances of this case bear all the hallmarks of a narcotics transaction. After receiving an unknown amount of currency from [co-actor] Furentino, Appellant got out of the vehicle and walked to the fence to retrieve a hidden baggie, and then returned to Furentino's vehicle and gave him the baggie. All of these activities were observed following [the] Officer['s] receipt of "numerous complaints of suspected narcotics activity" in the area from "non-anonymous sources." TCO at 1–2 (emphasis added). [The] Officer . . . had significant experience in narcotics interdiction and testified that his observations were consistent with narcotics trafficking. Finally, [the] Appellant was found in possession of a large amount of cash immediately following the observed transaction, and the recipient of the baggie was found in possession of a significant number of prescription pills. Given all these coinciding circumstances, there was more than sufficient evidence from which the jury could reasonably infer that the bag of pills found on [the co-actor] had been delivered moments before by [the] Appellant. This inference was not, in any sense, "in contradiction to the physical facts, in contravention to human experience or the laws of nature." [**Commonwealth v.**] **Widmer**, 744 A.2d [745] at 751 [Pa. 2000].

**Thompson**, 93 A.3d at 489–490.

Here, Officer Ratka testified as follows:

[Appellant] was standing on the side of the Chinese take-out store at the corner of Cambridge, Ridge, and 18th where [they] all meet[].

-11-

Your Honor, he was inside this store. He was approached by a black female who was wearing red shorts and a white top. They had a conversation inside the store.

At approximately 10:53 [p.m.], they exited the store. Ms. Harris came out. Stood in front of the store. [Appellant] followed behind her, dropped an object in front of her and then he started to walk slowly up 18th Street northbound.

* * *

[Appellant] continued to walk northbound on 18th Street towards Girard at a slow pace. Ms. Harris bent down, picked the object up and turned and walked northbound also on 18th Street looking at it in her right hand **until I lost sight of her** until they went eastbound on Girard Avenue.

N.T., 2/12/13, at 9–10. At that point Officer Ratka radioed the description and direction of both Ms. Harris and [Appellant] to backup officers *Id*. at 11.

Officer Ratka also testified that it was approximately 10:50 p.m. and "[i]t was dark out . . . ." N.T., 2/12/13, at 12. On cross-examination, he admitted that he never observed Ms. Harris give Appellant any money. *Id*. at 14. Officer Ratka never described the size or shape of the item Appellant dropped other than terming it "small objects." *Id*. at 13.

We have a number of observations about this testimony. It was nearly 11:00 at night, it was dark out, and the observing officer was in his vehicle using binoculars. While he saw Appellant drop an object, the officer could not describe its size or shape. Ms. Harris picked up the object and stared at it while holding it in her hand. Then the officer lost sight of both Appellant

and Ms. Harris. He never observed an exchange of money and never saw Ms. Harris put the object in her pocket. Appellant was found in possession of merely $10.00.

Moreover, Ms. Harris's action of walking and looking at the object in her hand does not support a conclusion that the object was drugs. One might suspect that the knowing possession of a packet of cocaine would spur the possessor to secrete the item away from observation. Moreover, such action is equally consistent with the conclusion that the possessor was unsure what she held in her hand and was attempting to identify it. More significantly, the fact that Officer Ratka lost sight of Ms. Harris is problematic to showing a chain of command of the item.

The lack of other indicia of a drug deal in the instant case undermines the verdict. There was no expert testimony describing Appellant's actions as resembling known drug behavior. Ms. Harris was not observed handing Appellant money despite Officer Ratka's use of binoculars with no described visual obstructions. Appellant and Ms. Harris did not attempt to conceal themselves in any way. No other drugs were recovered, either from a stash spot or on Appellant's person. The officers never saw Appellant take any money nor did they observe him remove the item he allegedly dropped. Ms. Harris was not seen placing any item in her pocket. Both Appellant and Ms. Harris were out of the officers' sight for an unidentified period. Finally,

police recovered only $10 on Appellant's person. *Cf.*, ***Commonwealth v. Jones***, 874 A.2d 108 (Pa. Super. 2005) (the defendant possessed $481 in small bills and a large amount of cocaine was found in a rental car in which the defendant was riding); ***Commonwealth v. Thompson***, 985 A.2d 928, 930 (Pa. 2009) (police recovered one packet of heroin from the alleged buyer and sixteen similar packets of heroin from the defendant); ***Commonwealth v. Smith***, 979 A.2d 913 (Pa. Super. 2009) (officers, who observed the defendant remove items from a sock in exchange for money, recovered nineteen packets of crack cocaine from the defendant's sock, marijuana in his pocket, and $303).

A finding that Appellant exercised dominion and control over the drugs in this case would be a conviction based on pure speculation and conjecture. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." ***Commonwealth v. Valette***, 613 A.2d 548, 551 (Pa. 1992). Accordingly, because we find the evidence insufficient to establish Appellant's possession of the cocaine, we must reverse the judgment of sentence and discharge Appellant.

Judgment of sentence reversed. Appellant is discharged.

President Judge Emeritus Ford Elliott has joined this Memorandum.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014