J-S51019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEXTER WILLIAMS, | |
| Appellant | No. 2439 EDA 2016 |

Appeal from the Judgment of Sentence July 19, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005312-2015

BEFORE:  BOWES and SHOGAN, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 17, 2017**

Appellant, Dexter Williams, appeals from the judgment of sentence[1] entered on July 19, 2016, in the Court of Common Pleas of Philadelphia County following his conviction at a bench trial of possession of marijuana[2] and violations of the Uniform Firearms Act, carrying a firearm though

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although Appellant identifies his appeal as lying from the order finding him guilty, the appeal properly lies from the judgment of sentence.  Therefore, we will treat this appeal as having been properly taken from the judgment of sentence.  **See Commonwealth v. O'Neill**, 578 A.2d 1334, 1335 (Pa. Super. 1990) ("In criminal cases, appeals lie from judgment of sentence rather than from the verdict of guilt.").

[2] 35 P.S. § 780-113(a)(31).

ineligible, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia.[3]  We affirm.

The trial court summarized the facts as follows:

On May 8, 2015, at approximately 11:40 a.m., Philadelphia Highway Patrol Officer Joseph Moore received information from his supervisor in regards to a shooting in the area of 3400 I Street in North Philadelphia.  Notes of Testimony ("N.T."), 2/22/2016, at 7.  The call did not provide any flash information as to the description of the suspect.  *Id*. at 20.  In an unmarked police vehicle, Officer Moore and Officer Williams drove northbound on 3400 H Street when Officer Moore observed the Appellant walking north on the east side of H Street.  *Id*. at 7-8.  The Appellant appeared to be walking swiftly, while grabbing and adjusting his waistband in a distinct manner.  *Id* at 8.  Behind Officer Moore's vehicle was a marked highway patrol vehicle, in which Officer Holmes was present in full uniform.  As he walked, the Appellant began to look over his shoulder toward the marked police vehicle.  *Id*.  The Appellant then stopped walking, made a U-turn and started walking southbound toward the police vehicle.  *Id*.  The Appellant continued walking southbound for a few steps until he proceeded to walk onto the porch of 3429 H Street.  While walking up the porch the Appellant continued to tug and adjust his waistband. *Id*. at 9.

Due to the Appellant's movements, Officer Moore, Officer Williams and Officer Holmes exited their respective vehicles to further investigate.  *Id*. at 10.  Officer Moore then told the Appellant to stop and show his hands.  *Id*. at 16.  [Appellant] said something to the effect of, "I didn't do anything."  *Id*.  Officer Moore observed a juice container in the Appellant's hand and a "small black object" in the other.  *Id*.  The Appellant opened the screen door of the porch and wedged himself between the screen door and the front entry door of the residence.  *Id*.  The Officers were unable to view the Appellant's hands while he was in between the doors of the porch.  The Officers continued to instruct the Appellant to show his hands.

_____

[3] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

After the Appellant failed to comply with commands, the Officers drew their weapons and continued to instruct the Appellant to stop what he was doing. *Id*. at 11. The Appellant crouched down between the screen door and the front door of the building. *Id*. While the Appellant was crouched down his hands were out of view for a few moments.

Upon further command, the Appellant discarded a black firearm from his right hand. *Id*. The Officers recovered the firearm and placed the Appellant under arrest. *Id*. After searching Appellant, the Officers recovered a clear bag containing 12 purple-tinted jars with purple lids, each containing a green weed and seed substance. *Id*. at 12. Inside the clear bag was another clear bag with a loose green weed substance. *Id*. The Officers also recovered $779 United States currency from the Appellant's left pants pocket. *Id*.

The arrest of the Appellant at 3429 H Street was approximately a block west from where an alleged shooting occurred an hour and a half earlier. *Id*. Officer Moore testified the 3400 block of H Street is in the 24th District in the East Division. *Id*. Officer Moore testified he has been a Philadelphia Police Officer for twenty-one years, twelve of those years on highway patrol. *Id*. Officer Moore stated the East Division is an area in which a high number of violent crimes occur. In particular, the area of H Street is an area that encounters crimes that are "usually very violent." *Id*. at 15. He stated the neighborhood is known for gun violence, armed robberies, and open-air narcotic sales. *Id*. at 14. Even when Officer Moore is not assigned to the East Division, he is advised to conduct a sweep of the area during his patrol. *Id*. He testified that he has made hundreds of arrests for guns during his career, several dozen of these in the East Division. *Id*. In addition, Officer Moore stated that in conducting gun arrests, he has recovered firearms from the vicinity of the person's waistband in the majority of cases. *Id*. at 15.

Trial Court Opinion, 1/27/17, at 2–4.

Appellant filed an *omnibus* pretrial motion, which included a motion to suppress physical evidence, on June 15, 2015. The trial court held a suppression hearing on February 22, 2016, and denied the motion to

suppress physical evidence on March 22, 2016. Appellant proceeded to a waiver trial on April 4, 2016, following which the court convicted Appellant of all charges, as described above. The trial court sentenced Appellant on July 19, 2016, to an aggregate term of imprisonment of six and one-half to fifteen years. Appellant filed a notice of appeal on July 26, 2016.

On August 23, 2016, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Thus, Appellant's Pa.R.A.P. 1925(b) statement was due on or before Tuesday, September 13, 2016. Appellant did not file his Pa.R.A.P. 1925(b) statement until September 23, 2016. It appears the trial court overlooked the lateness of Appellant's filing, and it issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 27, 2017, in which it addressed the issues raised by Appellant in his Rule 1925(b) statement. Therefore, we need not remand. **See Commonwealth v. Brown**, 145 A.3d 184, 186 (Pa. Super. 2016), *appeal denied*, 165 A.3d 892 (Pa. 2017) (While untimely filed Rule 1925(b) statement often requires remand, "where the trial court addresses the issues raised . . . , we need not remand but may address the issues on their merits. **See Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa. Super. 2012).").

Appellant raises one issue on appeal:

1. Did the suppression court/trial court err in denying suppression where the police did not possess the necessary factual information to stop [A]ppellant based on the totality of the circumstances[?]

Appellant's Brief at 4.

We note our standard of review:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. McCoy*, 154 A.3d 813, 815–816 (Pa. Super. 2017). We may consider only evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa. 2013). Instantly, Appellant presented no witnesses, and the Commonwealth presented one. Therefore, the Commonwealth's evidence is uncontradicted. *See Commonwealth v. Runyan*, 160 A.3d 831, 834 (Pa. Super. 2017) (citing *Commonwealth v. Petty*, 157 A.3d 953, 955 (Pa. Super. 2017), and *Commonwealth v. Smith*, 979 A.2d 913, 917–18 (Pa. Super. 2009) (The "Commonwealth's evidence is essentially uncontradicted" because the defense did not present any witnesses at the suppression hearing.)).

In a three–paragraph argument, Appellant asserts that the seized evidence should have been suppressed because police lacked "reasonable suspicion that criminal activity was afoot and that [A]ppellant was armed

- 5 -

and dangerous." Appellant's Brief at 8. Appellant wholly fails to refer to the record in support of his broad statements and allegations of fact. Moreover, he fails to develop any meaningful analysis in support of his claims. Thus, we could find the argument waived. *Commonwealth v. Woodard*, 129 A.3d 480, 502 (Pa. 2015), *cert. denied*, 137 S.Ct. 92 (2016).

Nevertheless, we have considered Appellant's claim, minimally-developed though it is. Following our review of the record, we conclude that the trial court adequately addressed Appellant's issue in its opinion filed pursuant to Pa.R.A.P. 1925(a) on January 27, 2017, and we affirm on its basis. We direct the parties to attach a copy of the opinion in the event of any future proceedings.

Judgment of sentence affirmed.

Judge Bowes joins the Memorandum.

P.J.E. Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

Commonwealth of Pennsylvania : CP-51-CR-0005312-2015

**FILED**

v.

JAN 2 7 2017

SUPERIOR COURT

Dexter Williams      Criminal Appeals Unit No. 2439 EDA 2016
First Judicial District of PA

CP-51-CR-0005312-2015 Comm. v. Williams, Dexter
Opinion

OPINION

7894567311

Ehrlich, J.

Dexter Williams, hereinafter Appellant, was found guilty of possession of marijuana and three separate violations of the Uniform Firearms Act following a non-jury trial on April 4, 2016.[1] Prior to trial, the Appellant litigated a motion to suppress on February 22, 2016. This court denied the motion following testimony and argument.

Appellant was sentenced on July 19, 2016, to an aggregate term of six and ½ to fifteen years of incarceration. A timely appeal followed.

On appeal, Appellant avers four points of error:

1. On or about May 8, 2015, Police Officer Joseph Moore while on patrol in and about the 4300 block of H Street at approximately 12:30 a.m. responded to a shooting that occurred on I Street (a block away) and an hour and a half earlier.

2. At the moment, Police Officer Moore had no information regarding the shooter, his/her direction of travel or description and no information regarding the Appellant who was 6'6" tall, African-American and was wearing gray basketball shorts and a black Nike jacket.

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

1

3. Police Officer Moore also had no specific tip on particular information that the Appellant was involved in any criminal activity when he observed him walking Northbound on H Street.

4. The officer observed the Appellant adjust his waistband as he was walking up H Street and again as he was walking up the steps of 4329 H Street, but the officer did not see a bulge on a gun belt or anything on Appellant that resembled a weapon.

5. The officers ordered the Appellant off of the porch which he had entered and at times could and could not see his hands, the officers drew their weapons as a result of Appellant's non-compliance to stop and show his hands and the Appellant discarded his weapon which the police recovered.

6. Police Officer Moore indicated that he ordered the Appellant to stop because he turned to avoid police and had adjusted his waistband, but that prior to telling him to stop, the Appellant had done nothing wrong.

7. In conclusion, the Appellant's statement is that the trial court erred by failing to grant Appellant's Motion to Suppress evidence and arrest as a result of an unlawful search and seizure.

Appellant's Pa.R.A.P. 1925(b) Statement.

As will be discussed below, these claims are without merit. Accordingly, no relief is due.

## The Evidence

On May 8, 2015, at approximately 11:40 a.m., Philadelphia Highway Patrol Officer Joseph Moore received information from his supervisor in regards to a shooting in the area of 3400 I Street in North Philadelphia. Notes of Testimony ("N.T."), 2/22/2016, at 7. The call did not provide any flash information as to the description of the suspect. *Id.* at 20. In an unmarked police vehicle, Officer Moore and Officer Williams drove northbound on 3400 H Street when Officer Moore observed the Appellant walking north on the east side of H Street. *Id.* at 7-8. The Appellant appeared to be walking swiftly, while grabbing and adjusting his waistband in a distinct manner. *Id* at 8. Behind Officer Moore's vehicle was a marked highway patrol vehicle,

2

in which Officer Holmes was present in full uniform. As he walked, the Appellant began to look over his shoulder toward the marked police vehicle. *Id.* The Appellant then stopped walking, made a U-turn and started walking southbound toward the police vehicle. *Id.* The Appellant continued walking southbound for a few steps until he proceeded to walk onto the porch of 3429 H Street. While walking up the porch the Appellant continued to tug and adjust his waistband. *Id.* at 9.

Due to the Appellant's movements, Officer Moore, Officer Williams and Officer Holmes exited their respective vehicles to further investigate. *Id.* at 10. Officer Moore then told the Appellant to stop and show his hands. *Id.* at 16. The defendant said something to the effect of, "I didn't do anything." *Id.* Officer Moore observed a juice container in the Appellant's hand and a "small black object" in the other. *Id.* The Appellant opened the screen door of the porch and wedged himself between the screen door and the front entry door of the residence. *Id.* The Officers were unable to view the Appellant's hands while he was in between the doors of the porch. The Officers continued to instruct the Appellant to show his hands. After the Appellant failed to comply with commands, the Officers drew their weapons and continued to instruct the Appellant to stop what he was doing. *Id.* at 11. The Appellant crouched down between the screen door and the front door of the building. *Id.* While the Appellant was crouched down his hands were out of view for a few moments.

Upon further command, the Appellant discarded a black firearm from his right hand. *Id.* The Officers recovered the firearm and placed the Appellant under arrest. *Id.* After searching Appellant, the Officers recovered a clear bag containing 12 purple-tinted jars with purple lids, each containing a green weed and seed substance. *Id.* at 12. Inside the clear bag was another

3

clear bag with a loose green weed substance. *Id.* The Officers also recovered $779 United States currency from the Appellant's left pants pocket. *Id.*

The arrest of the Appellant at 3429 H Street was approximately a block west from where an alleged shooting occurred an hour and a half earlier. *Id.* Officer Moore testified the 3400 block of H Street is in the 24th District in the East Division. *Id.* Officer Moore testified he has been a Philadelphia Police Officer for twenty-one years, twelve of those years on highway patrol. *Id.* Officer Moore stated the East Division is an area in which a high number of violent crimes occur. In particular, the area of H Street is an area that encounters crimes that are "usually very violent." *Id.* at 15. He stated the neighborhood is known for gun violence, armed robberies, and open-air narcotic sales. *Id.* at 14. Even when Officer Moore is not assigned to the East Division, he is advised to conduct a sweep of the area during his patrol. *Id.* He testified that he has made hundreds of arrests for guns during his career, several dozen of these in the East Division. *Id.* In addition, Officer Moore stated that in conducting gun arrests, he has recovered firearms from the vicinity of the person's waistband in the majority of cases. *Id.* at 15.

## Discussion

Appellant asserts that the initial stop and search by police was unlawful, and all evidence should have been suppressed.

In addressing pedestrian stops by police officers, the Supreme Court of the United Sates determined that "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "When conducting a Terry analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present."

4

*Commonwealth v. Carter*, 105 A.3d 765, 769 (Pa. Super. 2014). In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. *Terry*, at 21. Courts are required to look at the totality of the circumstances in order to determine whether the officers had reasonable suspicion for a stop. *Commonwealth v. Dixon*, 997 A.2d 368, 380 (Pa. Super. 2010). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999) (citations omitted).

Pennsylvania law recognizes three levels of police encounters for search and seizure analysis:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Carter* at *2-3 (Pa. Super. 2014) (internal citations omitted).

Brief investigative stops are permitted when law enforcement has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (citing *Navarette v. California*, 134 S. Ct. 1683, 1688-90 (2014).

Evasive behavior is just one of the many factors law enforcement can draw upon to form reasonable suspicion. In *Illinois v. Wardlow*, the United States Supreme Court stated "unprovoked flight upon noticing the police" in a high crime area is a pertinent factor in determining reasonable suspicion. *Commonwealth v. Washington*, 51 A.3d 895, 898 (PA Super. 2012) (citing *Illinois v. Wardlow* 528 U.S. 119, 124 (2000)).

5

In the instant case, Officer Moore received information from his supervisor of an alleged shooting on the 3400 block of I Street. About thirty minutes after receiving the information, Officer Moore observed Appellant on 3400 H Street, one block west of 3400 I Street. The Appellant was seen walking swiftly while grabbing and adjusting his waistband with both hands. After the Appellant looked over his shoulder, in the direction of Officer Moore's marked patrol vehicle, he stopped walking. He then made a U-turn and started walking southbound, toward the police vehicles. The police officers stopped and exited their vehicles. Again, the Appellant turned, made eye contact with the officers and continued to tug and adjust his waistband. Officer Moore stated the Appellant appeared evasive after noticing Officer Holmes' marked police vehicle. As stated, after a suspect learns of police presence, one's evasive behavior is a pertinent factor in the totality of the circumstances analysis. In this case, Appellant's actions appeared evasive as soon as he saw Officer Holmes' vehicle over his shoulder.

Officer Moore has been a Philadelphia Police Officer for twenty-one years, twelve years on highway patrol. Officer Moore testified the 3400 block of H Street is in the 24th District in the East Division. Officer Moore stated the East Division is an area in which a high number of violent crimes occur. He testified that he has made hundreds of arrests for guns during his career, several dozen in the East Division. Even when Officer Moore is not assigned to the East Division, he is advised to conduct a sweep of the area during his patrol. The neighborhood is known for gun violence, armed robberies and open-air narcotic sales. Officer Moore stated H Street, in particular, is a street in which "very violent" crimes occur.

Officer Moore believed the Appellant had a firearm on his person based on his actions and the surrounding circumstances. Officer Moore spotted the Appellant a block away from where a founded shooting occurred and within thirty minutes of his supervisor's call. No other pedestrians

6

were observed in the area. Officer Moore testified that after observing the Appellant his first instinct was the Appellant could have a gun in his waistband. Based on Officer Moore's experience, the waistband is a common area of the body in which individuals carry and conceal firearms. After the totality of the circumstances evolved, Officer Moore testified he was certain the Appellant was carrying a gun due to the tugging and adjusting of the waistband. In addition, Appellant was observed in a high crime area late at night.

Officer Moore drew upon his experience, as well as his knowledge of the area, training, experience and observations that night, to conclude that Appellant may be involved in criminal activity. The court found Officer Moore's observations were sufficiently specific and reliable for him to form reasonable suspicion. The reasonable suspicion was heightened into probable cause when Officer Moore witnessed the Appellant discard a firearm from his person.

Given the totality of the circumstances, Officer Moore's investigatory detention of Appellant was supported by reasonable suspicion.

7

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

_____ J.

8