J-A22003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DALE ROBERT MONROE | |
| Appellant | No. 101 MDA 2014 |

Appeal from the Judgment of Sentence December 13, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001005-2013

BEFORE:  PANELLA, J., SHOGAN, J., and FITZGERALD, J.[*]

JUDGMENT ORDER BY PANELLA, J.              **FILED FEBRUARY 19, 2015**

Appellant, Dale Robert Monroe, appeals from the judgment of sentence entered December 13, 2013, by the Honorable John S. Kennedy, Court of Common Pleas of York County.  No relief is due.

The trial court summarized the facts of this case as follows.

> On December 10, 2012, at 6:47 p.m., Officer Albert Miles, was on patrol in his marked police vehicle, stationed at the Fawn Grove Boro Rutter[']s parking lot.  During his patrol he noticed a [b]lack 2008 Chevrolet Silverado parked in a parking [space] with a white male driver in the driver's seat.  Pursuant to his normal job duties, he ran a PennDOT records check which indicated that the registered owner, Dale Robert Monroe, the Appellant in this case, had a license status of DUI Suspended.  The officer then pulled up the PennDOT picture of the registered owner and it matched the white male sitting in the driver seat.  The

---

[*] Former Justice specially assigned to the Superior Court.

officer observed the vehicle from a distance until the vehicle began to pull out of the Rutter's parking lot. Upon exiting the parking lot, the officer activated his emergency lights and conducted a traffic stop.

Officer Miles approached the vehicle and explained to the driver why he pulled him over. The driver related to the officer that he had a license, but handed him, instead, a change of address card. The driver then related that he does not have a picture license. The driver then handed the officer his oil change paper work along with his registration and insurance. While engaging the driver, the officer detected a moderate odor of an alcoholic beverage emanating from the driver's breath and person. The driver's eyes were also bloodshot and glassy. The driver indicated that he had not been drinking, when questioned.

Officer Miles identified the driver as Dale Monroe, the Appellant in this case, by his passport. Appellant related that there was alcohol in one of the cup holders. Officer Miles requested that Appellant exit the vehicle and perform field sobriety tests. When Appellant opened the door, the officer observed an open glass bottle of Bud Light Lime in the driver['s] door cup holder that was half-full. Upon exiting the vehicle, Appellant was unsure of his footing.

Upon complete of field sobriety tests, Officer Miles placed Appellant into custody and transported him to York Hospital for a blood draw. The lab results indicated a blood alcohol content of .101, and the presence of Diazepam, Nordiazepam, and Morphone-Free in Appellant's blood.

Trial Court Opinion, 3/14/14 at 2-3 (unnumbered).

Appellant was arrested and charged with four counts of Driving Under the Influence of Alcohol or Controlled Substance,[1] Driving While BAC .02 or Greater While License Suspended-DUI Related,[2] Careless Driving,[3] and

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (b), (d)(1)(ii) and (d)(3).
[2] 75 Pa.C.S.A. § 1543(b)(1.1)(i).

Restriction of Alcoholic Beverages.[4] Appellant filed an Omnibus Pre-Trial Motion to suppress physical evidence. Following a suppression hearing, the trial court denied Appellant's motion. A bench trial was conducted and the trial court convicted Appellant of two counts of DUI[5] and Driving While BAC .02 or Greater While License Suspended-DUI Related. The trial court sentenced Appellant on December 13, 2013. This timely appeal followed.

On appeal, Appellant argues that Officer Miles lacked both reasonable suspicion to believe that a violation of the vehicle code had occurred and probable cause to believe that Appellant was driving while impaired. We have reviewed Appellant's brief, the relevant law, the certified record, and the well-written opinion of the able trial judge, the Honorable John S. Kennedy. We find that the trial court's opinion, filed on March 14, 2014, ably and comprehensively disposes of Appellant's issues on appeal, with appropriate reference to the record and without legal error. Therefore, we affirm on the basis of that opinion.

_(Footnote Continued)_ ————————

[3] 75 Pa.C.S.A. § 3714.
[4] 75 Pa.C.S.A. § 3809.
[5] 75 Pa.C.S.A. §§ 3802(b) and (d)(1)(ii).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/19/2015</u>

# IN THE COURT OF COMMON PLEAS, YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF          :          No. CP-67-CR-1005-2013
PENNSYLVANIA             :
                         :
vs.                      :
                         :
DALE R. MONROE           :
     Appellant           :

APPEARANCES:
    For The Commonwealth:          Duane Ramseur, Esquire
    For The Defendant:             Jenna M. Fliszar, Esquire

## STATEMENT OF LOWER COURT PURSUANT TO RULE 1925(a) OF THE

## PENNSYLVANIA RULES OF APPELLATE PROCEDURE

Appellant, Dale Monroe, was charged with four counts (4) of Driving Under the

Influence of Alcohol or Controlled Substance[1], Driving Under Suspension-DUI Related and

Alcohol in System[2], Careless Driving[3], and Restriction of Alcoholic Beverages[4]. On

November 13, 2013, during a stipulated bench trial, the court found Appellant guilty of

Count II[5], Count III[6], and Count V[7].[8] Appellant was sentenced on December 13, 2013, as

follows: Count III[9], five (5) years of intermediate punishment ("IP") with direction to serve

---

[1] 75 Pa.C.S.A. §3802(a)(1); §3802(b); §3802(d)(1)(ii); and §3801(d)(3).
[2] 75 Pa.C.S.A. §1543(b)(1.1)(i).
[3] 75 Pa.C.S.A. §3714(a).
[4] 75 Pa.C.S.A. §3809(a).
[5] §3802(b).
[6] §3802(d)(1)(ii);
[7] *See supra* n.2.
[8] Appellant was found not guilty of Count I and Count IV. Count VI and VII were withdrawn.
[9] Count II and Count III merged for purposes of sentencing.

nine (9) months out-mate program followed by one year of house arrests with alcohol monitoring; and Count V, ninety (90) days on out-mate concurrent with count III. Appellant received a total aggregate sentence of nine (9) months of out-mate followed by one year of house arrests during the term of his IP sentence.

On December 13, 2013, Appellant filed a Post-Sentence Motion, which was denied on the same. On January 13, 2014, Appellant filed a Notice of Appeal of this Court's verdict entered on November 13, 2013. We directed Appellant to file a 1925(b) Statement of Matters Complained of on Appeal. On February 4, 2014, Appellant filed his timely 1925(b) statement. We now issue the following Opinion:

## FACTS AND PRODECURAL HISTORY

On December 10, 2012, at 6:47 p.m., Officer Albert Miles, was on patrol in his marked police vehicle, stationed at the Fawn Grove Boro Rutters parking lot. (Aff. Prb. Cs. Miles, ¶ 1). During his patrol he noticed a Black 2008 Chevrolet Silverado parked in a parking stall with a white male in the driver's seat. *Id.* Pursuant to his normal job duties, he ran a PennDOT records check which indicated that the registered owner, Dale Robert Monroe, the Appellant in this case, had a license status of DUI Suspended. *Id.* The officer then pulled up the PennDOT picture of the registered owner and it matched the white male sitting in the driver seat. *Id.* The officer observed the vehicle from a distance until the vehicle began to pull out of the Rutter's parking lot. *Id.* Upon exiting the parking lot, the officer activated his emergency lights and conducted a traffic stop. *Id.*

Officer Miles approached the vehicle and explained to the driver why he pulled him over. *Id.* at ¶ 2. The driver related to the officer that he had a license, but handed him, instead, a change of address card. *Id.* The driver then related that he does not have a picture license. *Id.* The driver then handed the officer his oil change paper work along with his registration and insurance. *Id.* While engaging the driver, the officer detected a moderate odor of an alcoholic beverage emanating from the driver's breath and person. *Id.* The driver's eyes were also bloodshot and glassy. *Id.* The driver indicated that he had not been drinking, when questioned. *Id.*

Officer Miles identified the driver as Dale Monroe, the Appellant in this case, by his passport. *Id.* at ¶ 3. Appellant related that there was alcohol in the one of the cup holders. *Id.* Officer Miles then requested that Appellant exit the vehicle and perform field sobriety tests. When Appellant opened the driver door, the officer observed an open glass bottle of Bud Light Lime in the driver door cup holder that was half-full. *Id.* Upon exiting the vehicle, Appellant was unsure of his footing. *Id.*

Upon completion of the field sobriety tests, Officer Miles placed Appellant into custody and transported him to York Hospital for a blood draw. *Id.* at ¶ 4. The lab results indicated a blood alcohol content of .101, and the presence of Diazepam, Nordiazepam, and Morphone-Free in Appellant's blood.[10]

### ISSUES PRESENTED

---

[10] The parties stipulated that if called to testify, the toxicologist would testify that the Morphine-Free came from heroin. N.T., 11/13/2013 at 5:19-21.

I. Whether the Trial Court erred in denying [Appellant]'s Motion to Suppress evidence obtained as a result of an unlawful traffic stop. More specifically, whether the officer possessed sufficient articulable facts to support a conclusion of reasonable suspicion that a motor vehicle violation was being committed when he executed the traffic stop of [Appellant]; and

II. Whether the Trial Court erred in denying [Appellant]'s Motion to Suppress evidence obtained as the result of an unlawful arrest. More specifically, whether the officer possessed sufficient probable cause to arrest [Appellant] on suspicion of Driving Under the Influence and request a blood draw as a result.

## DISCUSSION

A thorough and careful review of the record reveals that each of the issues raised by Appellant are without merit and thus, the instant appeal should be **DENIED.**

**I. Whether the court erred in denying Appellant's Motion to Suppress evidence as a result of an unlawful traffic stop.**

Appellant claims that the trial court erred in denying his Motion to Suppress because the officer did not possess sufficient articulable facts to support a conclusion of reasonable suspicion that a motor vehicle violation was being committed when he executed the traffic stop of Appellant.

Appellant averred that, although the officer pulled up the PennDOT picture of the registered vehicle, the lightening was such that a proper identification of the driver was not possible. Appellant claims that the officer's description of the driver as a white male with

dark hair was not sufficient to match the picture of the registered driver and, therefore, the officer did not have reasonable suspicion to effectuate a traffic stop on the basis of a suspended license.

The standard of review of a suppression court's ruling is well established in Pennsylvania. The Supreme Court of Pennsylvania has determined that the scope of review is

> limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Crompton*, 545 Pa. 586, 682 A.2d 286 (1996); *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991). When a defendant has appealed an order denying a motion to suppress evidence, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985), *cert. denied*, 474 U.S. 950, 106 S. Ct. 349, 88 L.Ed.2d 297 (1985). If they are supported in the record, we are bound by the facts as the suppression court found them and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. *Id.*

*Commonwealth v. Stallworth*, 781 A.2d 110, 115 (Pa. 2001). It is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given to their testimony. *Commonwealth v. Griffen*, 785 A.2d 501, 505. (Pa. Super. 2001). The suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing. *Id.* In the instant case, Appellant avers that the suppression court erred when it determined that Officer Miles had reasonable suspicion to initiate a traffic stop upon suspicion that Appellant had committed a motor vehicle violation, namely, driving with a suspended license.

A person violates the motor vehicle code when he or she drives with a suspended license. Specifically, a person commits Driving Under Suspension- DUI Related and Alcohol

in System, where the person has a BAC equal or greater than .02% or any amount of a schedule I or nonprescribed Schedule II or III controlled substance, and who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended. 75 Pa.C.S.A. §1543(b)(1.1)(i).

There are three types of interactions between police and a citizen:

> Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause. *Commonwealth v. Au,* 986 A.2d 864, 866–67 (Pa.Super.2009) (*en banc* ), *appeal granted on different grounds,* 606 Pa. 113, 995 A.2d 349 (2010).

*Commonwealth v. Downey,* 39 A.3d 401, 405 (Pa. Super. 2012). A totality of the circumstances approach is used to determine whether or not a seizure has been executed. *Id.* (citing *Commonwealth v. Coleman,* 19 A.3d 1111, 1116 (Pa. Super. 2011)). A police officer who has reasonable suspicion that a violation of the motor vehicle code is occurring or has occurred may stop a vehicle for the purposes of checking the driver's license. 75 Pa.C.S.A. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop. *Commonwealth v. Feczko,* 10 A.3d 1285, 1291 (Pa. Super. 2010). The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable

caution in the belief that an offense has been or is being committed. *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007).

Officer Miles, in the course of his duties, ran the registration for Appellant's vehicle. Upon discovery that the owner of the vehicle's license was suspended, the officer pulled up the owner's picture through the PennDOT database. The officer then matched the description of the driver of the vehicle with that of the owner whose picture appeared in the PennDOT database with the status of a suspended license due to a previous DUI. Thus, when Appellant drove out of Rutter's parking lot, the officer had to have reasonable suspicion that Appellant had committed a motor vehicle violation in order to effectuate a traffic stop because further investigation is required to ensure that the driver is the owner with the suspended license.

Reasonable suspicion is a lower standard than probable cause. Reasonable suspicion "depends on the information possessed by police and its degree of reliability in the totality of the circumstances." *Id.* at 406.

> In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Id.* (citing *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010)).

In this case, Appellant was the driver of the vehicle. Officer Miles ran the registration and discovered that the owner of the vehicle had a suspended license. In addition, Officer Miles pulled up the picture of the owner. In his experience as a police officer, Officer Miles

concluded that the driver of the vehicle matched the picture of the owner in the PennDOT database. Knowing that the appellant's license was suspended and observing the appellant drive the vehicle, the officer not only had reasonable suspicion, but had probable cause that Appellant was committing the noted infraction because the officer observed the infraction for himself and unquestionably possessed facts to warrant belief by any reasonable person that Appellant violated the vehicle code. Thus, the trial court did not abuse its discretion by denying Appellant's motion to suppress the evidence.

**II.     Whether the court erred in denying Appellant's Motion to Suppress evidence as a result of an unlawful arrest.**

Appellant's next argument is that the trial court erred in denying his Motion to Suppress because the officer did not possess sufficient probable cause to arrest Appellant on suspicion of Driving Under the Influence and to request a blood draw as a result.

Appellant avers that the officer lacked any articulable reasons to arrest Appellant except for bloodshot, glassy eyes, unsteady balance upon exiting the vehicle, odor of alcohol, and the presence of alcohol in the vehicle. Appellant maintains that those reasons are insufficient in themselves to rise to the level of probable cause for a lawful arrest. Furthermore, Appellant claims that he displayed no erratic behavior, his medical conditions could cause the unsteadiness and bloodshot eyes , and he passed a field sobriety test, thus probable cause did not exist that Appellant was under the influence.

As discussed above, the scope of review for the suppression court's denial of a motion to suppress is limited to determining whether the findings of fact are supported by the record

and whether the legal conclusions drawn from those facts are in error. *Stallworth*, 781 A.2d at 115. In the instant case, the officer had reasonable suspicion to conduct a traffic stop to determine if Appellant was driving under suspension. Upon his determination that Appellant was driving under suspension and in the course of this traffic stop, Officer Miles had renewed reasonable suspicion to believe that Appellant was also driving under the influence. After conducting field sobriety tests combined with his observations of Appellant, Officer Miles had probable cause to arrest Appellant for driving under the influence.

As determined above, the officer had reasonable suspicion, if not probable cause, to initiate a traffic stop of Appellant due the officer's belief that he was driving with a suspended license. Thus, at the point of the stop and confirmation of the motor vehicle violation, the investigatory detention concluded. Once the primary traffic stop has concluded, however, the officer's authority to order either driver or occupant from the car is extinguished. *Commonwealth v. Sierra*, 723 A.2d 644, 647 (Pa. 1999). Thus, if subsequently the officer directs or requests the occupants to exit the vehicle, his show of authority may constitute an investigatory detention subject to a renewed showing of reasonable suspicion. *Commonwealth v. Reppert*, 814 A.2d 1196, 1202 (Pa. Super. 2002).

In *Freeman,* our Supreme Court defined multiple relevant circumstances on the basis of which we may recognize the end of a traffic stop and the commencement of another interaction:

> the existence and nature of any prior seizure; whether there was a clear and expressed endpoint to any such prior detention; the character of police presence and conduct in the encounter under review (for example—the number of officers, whether they were

uniformed, whether police isolated subjects, physically touched them or directed their movement, the content or manner of interrogatories or statements, and "excesses" factors [sic] stressed by the United States Supreme Court); geographic, temporal and environmental elements associated with the encounter; and the presence or absence of express advice that the citizen-subject was free to decline the request for consent to search.

*Reppert*, 814 A.2d at 1202 (citing *Commonwealth v. Freeman*, 757 A.2d 903, 906-07 (Pa. 2000)).

Upon consideration of these circumstances we concluded that the prior traffic stop gave way to a new interaction when Officer Miles ordered Appellant to exit the vehicle. Officer Miles had renewed reasonable suspicion that Appellant was driving under the influence due to Appellant's glassy and bloodshot eyes, the smell of alcohol on his breath, and Appellant's admission of an open container in the vehicle. At this point, Officer Miles acting under reasonable suspicion, had the authority and upon that authority did order Appellant to exit the vehicle to perform field sobriety tests.

During this investigation, upon exiting the vehicle, Appellant was unsteady on his feet. Although initially saying he could complete all of the field tests, Appellant failed to complete the walk-and-turn test.[11] N.T., 5/20/2013 at 11:17-20; 12:1-2. Upon administration of the HGN,[12] Appellant showed a lack of pursuit in both eyes and a distinctive sustained nystagmus at maximum deviation in both eyes. N.T. at 13:3-6. Appellant failed this field sobriety test.[13] Appellant next performed the one-leg stand. *Id.* at 13: 19. Although he

---

[11] Appellant indicated that he had bad knees from construction work and the pain would not allow him to complete the test.

[12] Horizontal Gaze Nystagmus test.

[13] He showed four possible clues of intoxication out of a possible six, which is considered to be a fail.

performed the test incorrectly, by counting when he put his foot down, Appellant was deemed to have passed this test. *Id.* at 14: 1-9. Lastly, Appellant tested positive for alcohol during the PBT test.[14]

As a result of Appellant's performance on the field sobriety tests as well as the fact that his license was indicated to be DUI suspended combined with the officer's observations of Appellant's unsteadiness, his glassy and bloodshot eyes, the smell of alcohol on his breath, and the open container of beer in his vehicle, Officer Miles, based on his training and education arrested Appellant for driving under the influence.

Both the United States and Pennsylvania Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8.

> To be constitutionally valid, an arrest must be based on probable cause. The existence or non-existence of probable cause is determined by the totality of the circumstances. The totality of the circumstances test requires a Court to determine whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Commonwealth v. Smith*, 979 A.2d 913, 916 (Pa. Super. 2009). The question we ask is not whether the officer's belief was "correct or more likely true than false, but rather if there is a probability, and not a prima facie showing, of criminal activity. *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). The Superior Court has explained that, "[p]robable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under

---

[14] The portable breath test had a positive result for an alcoholic beverage. It was a .07 percent BAC.

the influence of alcohol or a controlled substance." *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. 2008)(citing *Commonwealth v. Hilliar*, 943 A.2d 984 (Pa. Super. 2008)).

Instantly, the record reflects that Officer Miles stopped Appellant's vehicle based on his reasonable suspicion that Appellant had committed violations of the Vehicle Code. When the officer spoke to Appellant, he detected classic signs of intoxication: an odor of alcohol together with Appellant's bloodshot and glassy eyes and admission of an open container of beer. Then, when exiting the vehicle, Appellant was unsteady on his feet. In addition, during the field sobriety tests, Appellant stated that he was unable to perform the walk-and-turn test because of bad knees.

Under the totality of the circumstances, Officer Miles possessed the requisite probable cause to arrest Appellant for DUI in this case as he had knowledge of sufficient facts to warrant a belief that Appellant had been driving under the influence of alcohol or a controlled substance. Thus, Appellant's claim is without merit.

## CONCLUSION

This Court has thoroughly reviewed all of the relevant pleadings and transcripts in this matter. We rely on and incorporate those pleadings and transcripts, including the within Opinion as its 1925(a) Opinion in the above-captioned matter.

BY THE COURT:

JOHN S. KENNEDY, JUDGE

Date: March 14, 2014