J-S76041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NAKEEM COLEMAN | |
| Appellant | No. 8 EDA 2016 |

Appeal from the Judgment of Sentence December 14, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0005773-2014
                                              CP-46-CR-0007537-2014

BEFORE:  STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 18, 2016**

Appellant Nakeem Coleman appeals the judgment of sentence entered in the Court of Common Pleas of Montgomery County on December 14, 2015, after a jury convicted him of two counts of burglary and one count of attempted burglary with a person present.[1]  On appeal, Appellant challenges the trial court's denial of his motion to suppress certain evidence along with the sufficiency and the weight of the evidence to sustain his convictions.  We affirm.

The trial court detailed the facts and procedural history herein as follows:

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 3502(a)(2), 901(a), and 3502(a)(1), respectively.

[Appellant's] convictions arose out of two residential break-ins in the same Glenside, Montgomery County neighborhood which occurred on July 22, 2014 and July 23, 2014, and Coleman's attempt to break into a third neighborhood home on July 25, 2014.

[Appellant] was identified as the perpetrator of all three break–ins based in part upon Detective Steven Fink's undercover surveillance investigation of the Glenside neighborhood on July 25, 2014, in which he caught [Appellant] in the act. Upon seeing the burglary in progress, Detective Fink radioed for assistance at which time [Appellant] took off running. [Appellant] was apprehended not long after, when he tried to board a SEPTA bus. Incident to that arrest, a search of [Appellant's] person turned up his cell phone and his keys. [Appellant] later consented to a search of his phone and gave Detective Fink a statement. [Appellant's] convictions for the completed burglaries were based upon analysis of his cell phone records and evidence linking him to the July 25, 2014, attempted burglary such as the texts messages and the similarities between all three incidents.

Prior to trial, a suppression hearing was held on June 19, 2015, wherein [Appellant] contested his arrest, arguing that Detective Fink had no probable cause for the arrest, and challenged the search of his cellphone, arguing that his consent to the phone search was for the limited purpose of his activities on the day he was taken into custody. (Motion to Suppress 6/19/15 pp. 3-4). At the conclusion of the hearing and after argument from the Commonwealth and defense counsel, this Court issued its findings of fact and conclusions of law. Suppression was denied.

On September 10, 2015, [Appellant] proceeded to a two-day jury trial. At trial the Commonwealth relied on the testimony of Detective Fink, Detective Shawn Williams, the testimony of the victims and the expert testimony of Detective Mark Minzola, an expert in the field of cellular telephone records analysis. The defense presented two witnesses, Mary Coleman-Edmond, [Appellant's] mother and Isaiah Turner, [Appellant's] friend. Finally, the Commonwealth called a witness to provide rebuttal testimony.

At trial the following facts were established. The Commonwealth first called Detective Shawn Williams of the Abington Police Department to testify. On July 25, 2014,

Detective Williams was working a plainclothes burglary detail because of two prior burglaries in Glenside. (Trial by Jury, V. 1, 9/10/15 p. 19). On that date, the detective was called by Detective Steven Fink to respond to the location of 2333 Geneva Avenue in Glenside. When he arrived he observed [Appellant] at the front door, knocking. Id. at 19-20. [Appellant] came down the front steps, only to go back up the steps to knock another time. Id. at 21. Detective Williams then lost sight of [Appellant] when he moved away from the front door. Id. The detective also noted that [Appellant] was on his cell phone and looking around the entire time Id. at 20, 21.

Previously on July 22, 2014, Detective Williams had responded to a radioed call of a completed robbery at 2152, Mount Carmel Avenue in Glenside. Id. at 16-17. He testified that in that burglary the point of entry into the home was the front window, noting that that the screen was cut in two places and that the perpetrator gained entry by pushing through the screen and pushing up the window. Id. at 18.

Next to testify was Sarah Drake, who resided at 2152 Mount Carmel Avenue, the victim of the July 22, 2014 burglary. Id. at 24. Ms. Drake testified that she left her house that morning at 7:00 a.m. and that everything in her house was organized. Id. at 25. However, when she returned home at about 5:30 p.m. she described the window blinds as jostled and the drawers to dressers in her study and her bedroom were open. Id. at 26. Her jewelry box, along with several other boxes, were dumped onto her bed. Id. Ms. Drake called the police, and it was at that time she noticed that her two laptops, a jar of change and her iPod were missing. Id. at 27.

Ms. Drake provided further detail of the state of her front window. She testified that that screen had been pushed up and that it had been cut on the bottom left hand side near the latch for where the screen could come off. Id. at 28-29. Ms. Drake approximated the holes to be about 2 inches. Id. at 28.

Third to testify was Steven Czyzewicz, a resident of 2135 Wharton Road, the victim of the July 23, 2014, burglary. On July 23, 2014, Mr. Czyzewisc [sic] left his home at about 9:00 a.m. and when he returned home at about 2:30 p.m. he noticed two laptops from his living room were missing. Also in the upstairs bedroom a jewelry box was dumped onto the bed and a glass container with cash was also missing. Id. at 35-36. Mr. Czyzewicz, also testified that a few day[s] after the break-in, he noticed that there were two holes at the bottom of his screen windows, about one to one-and-a-half inches wide and a half-

inch in length. Id. at 36-37. The holes were right where the clips were for opening and closing the screen, which slides up and down. Id. at 37, 40.

Fourth, the Commonwealth called Elizabeth Czyzewicz, Mr. Czyewicz's [sic] daughter. At about 12:30 on July 23, 2014, she had stopped by her parents' home to pick up her cell phone. Id. at 44. She noticed that the back door was wide open, which was unusual and out of the ordinary. Id.

Mrs. Joy Czyzewicz, wife of Mr. Czyzewisz [sic], also testified that on July 23, 2014, she left the home at about 11:30 a.m. When she left her home the back door was closed, jewelry was not dumped out onto the bed and the glass vase with $ 700 was still in its place. Id. at 49-51. All these things were not in their original position, at the time she returned at 3:30 p.m. Id. at 51-52.

The final victim to testify was Mervin Gratz of 2333 Geneva Avenue, the victim of the July 25, 2014 attempted break-in. Id. at 55. On that day at about 11:30 a.m., Mr. Gratz was at home. Id. at 55. When he looked out of his first-floor bedroom window, he saw [Appellant] on his window ledge. Id. at 56, 57, 63. [Appellant] was doing something with his hands around the lock area of the window screen. Id. at 56-57. It appeared to Mr. Gratz that [Appellant] was trying to get into his home. Id. at 56.

Next, [the] Commonwealth presented the testimony of Detective Steven Fink, 24-year veteran of the Abington Police Department. Id. at 65. Detective Fink is a supervisor in the Special Investigations Unit, a primarily plainclothes unit that does a lot of surveillance. Id. The detective explained that if there is a crime pattern in an area, members of that unit go to that area and conduct surveillance. Id. Most of the detective's work in this unit has been to investigate residential burglaries. Id. Detective Fink estimated that in the past five years he has investigated over 400 residential burglaries, and during the course of his investigations he has watched burglaries in progress. Id. at 66-67.

On July 25, 201[]4, Detective Fink was on surveillance in the Glenside neighborhood with Detective Williams and several other officers, because the prior burglaries occurred in that neighborhood, within blocks of each other. Id. at 70-71. Detective Fink testified that at approximately 11:30 a.m., he saw [Appellant], who was wearing camouflage pants, boots and a hat, walking down Keswick Avenue, talking on his cell phone, spinning his keys and looking around at houses. Id. 71-72. Detective Fink's interest was piqued when he saw [Appellant] go

to Geneva Avenue from where he had first seen [Appellant] on Keswick Avenue, since it wasn't the most direct route. Id. at 72. The detective decided to watch [Appellant], as [Appellant] continued to walk up Geneva Avenue looking at all the houses, spinning his keys and talking on his cell phone. Id. at 72. Detective Fink observed [Appellant] walk up to the front door at 2333 Geneva Avenue and knock. Id. at 72-73. Coleman remained on his phone, looking all around. Id. at 73. At that point, Detective Fink Called Detective Williams over to assist in surveillance. Id. [Appellant] walked off of the front porch, looked around again and went back up on the porch. Id. This struck Detective Fink as highly suspicious. Id. [Appellant] again walked off the porch and over to the set of hedges in front of a window. Id. [Appellant] duck[ed] down in the bushes, reached down inside his boots and pulled out a pair of gloves. Id. [Appellant] put on the gloves, all while looking around. Id. Behind the bushes [Appellant] was on his tippy toes doing something at the window with his hands. Id. at 77. Based upon the detective's observations of [Appellant] that day and his knowledge of the two prior burglaries in the same neighborhood days earlier, he suspected that [Appellant] was trying to break into the home at 2333 Geneva Avenue. He radioed for more officers to respond to the area. Id. All of a sudden [Appellant] got down from the window, took off the gloves and pretended to wave to someone across the street, despite the fact that there was no one there. Id. at 78.

Detective Fink also testified that after [Appellant] left from 2333 Geneva Avenue, he walked up the street for a couple of blocks, remaining on his cell phone and spinning his keys. Id. at 79. [Appellant] actually went up onto the porch of another house and knocked on that door. Id. [Appellant] walked off and tried to board a SEPTA bus. Id. At that point [Appellant] was stopped by police. Id. When Detective Fink arrested [Appellant], a search of his person turned up his cell phone and his key ring. Id. at 80. [Appellant] also voluntarily agreed to give a statement to police, in which he tried to explain away his presence at the Geneva Avenue home. Also in the statement, [Appellant] admitted that he thought of breaking into the home, but later abandoned his plan when he thought about his son and the risk he was taking. Id. at 92-94.

Detective Fink testified at trial that the four keys on the key ring looked to have been freshly cut. They were substantially sharper than a normal key. Id. at 81. The detective asked [Appellant] for consent to search his cell phone, which

- 5 -

[Appellant] did provide. Id. at 81-82. A search of the phone revealed that there were several text messages, and in particular there was a text message conversation between [Appellant] and a person on the phone entered into the contacts as "My Boy Zeek". Id. at 84. At trial, the detective interpreted the text conversation from July 24, 2014, between Coleman and My Boy Zeek which used jargon the detective was familiar with. Id. at 85.

Detective Fink also served a search warrant on AT &T for [Appellant's] cell phone records for phone number 267-319-4722. Id. at 87-88. AT&T responded with the call details records, which set forth the calls made by [Appellant], the calls [Appellant] received, how long the calls lasted and what cell towers the calls were transmitted through from the time period of July 22nd to July 25th. In reviewing the phone records, Detective Fink noticed that during the time he surveilled [Appellant] at the 2333 Geneva Avenue address the phone number that he was talking to was 267-258-1802. Id. at 90. The phone records also show that on the days of the other burglaries, during the times the homeowners were away from the house, [Appellant] was talking to the same phone number. Id. at 91. On July 22nd, there were six calls between 12:07 p.m. and 12:34 p.m. between the two phone numbers. Id. On the 23rd, between 10:56 a.m. and 11:48 a.m., there were eight calls back and forth between the two phone numbers. Id. On July 25th, from the time the detective began to watch [Appellant] at 11:30 a.m. until 11:48 a.m., [Appellant] was on the phone almost the entire 18 minutes, although it was broken up into five or six different calls. Id. at 92.

The next witness to testify at trial on behalf of the Commonwealth was Detective Mark Minzola who was qualified as an expert in the field of cellular telephone records analysis. Id. at 148. In sum, Detective Minzola testified that the records indicate that Coleman was in the respective area on the days of the burglaries.

Finally, the Commonwealth called one additional witness before it rested. The defense offered two witnesses of its own. At the conclusion of the trial, the jury found Coleman guilty of the aforementioned convictions.

On December 14, 2015, Coleman was sentenced to an aggregate term of seven-and-a-half to 20 years' imprisonment.[2]

Trial Court Opinion, filed 2/9/16, at 1-9.

On December 23, 2014, Appellant filed a counseled, timely Motion for Reconsideration and Motion to Modify Sentence wherein he challenged the weight of the evidence to sustain his convictions and the discretionary aspects of his sentence; however, before the trial court decided the motion, Appellant filed a *pro se* notice of appeal with this Court on December 28, 2015. On December 30, 2015, the trial court denied the post-sentence motion and also directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his Preliminary Concise Statement on January 20, 2016. The trial court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on February 9, 2016.

On January 5, 2016, trial counsel filed in this Court a Petition to Remand or in the Alternative, Quash Appeal as Prematurely Filed. In a *per curiam* Order of February 8, 2016, we denied counsel's petition in light of the fact Appellant's *pro se* appeal from the December 14, 2015, judgment of

---

[2] In the matter docketed at CP-46-CR-0005773-2014 charging Appellant with criminal attempt burglary with a person present, he received a prison term of four years to ten years. For his convictions at CP-46-CR-0007537-2014, Appellant was sentenced to three and one-half years to ten years in prison to run consecutively to the sentence imposed for the aforementioned conviction and a concurrent term of three and one-half years to ten years' imprisonment.

sentence had become final for purposes of appeal following the denial of Appellant's post-sentence motion. (citing Pa.R.Crim.P. 720(A)(2)(a), Pa.R.A.P. 905 (a)(5)).

In his brief, Appellant presents the following questions for our review:

A)    Whether the trial court erred in denying Appellant's suppression motion[?]  There was no reasonable suspicion or probable cause to seize [A]ppellant's person or his property.

B)    Whether the evidence presented by the Commonwealth at trial even if taken in a light most favorable to the verdict winner was insufficient as a matter of law to find [A]ppellant guilty of any of the charges of burglary[?]

C)    Whether the trial court erred in failing to grant Appellant's challenge to the weight of the evidence[?]

Brief for Appellant at 8.

In considering Appellant's first issue, our relevant inquiry is whether Detective Fink had probable cause to arrest Appellant for attempted burglary.  Appellant maintains that as no probable cause existed to arrest him for attempted burglary on July 25, 2014, the evidence of cell phone messages introduced to tie him to the two prior burglaries should have been inadmissible at trial as it was obtained in violation of his right to be free from unreasonable searches and seizures.  Brief for Appellant at 12.

This Court's standard for reviewing for challenges to the denial of a suppression motion is well-settled:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are

- 8 -

supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa.Super. 2015), *reargument denied* (Sept. 30, 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016) (citation omitted) (brackets in original). In addition, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 622 Pa. 126, 149, 79 A.3d 1073, 1087 (2013). Moreover, our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations which are within its sole province. *Id.* at 1080 n. 6.

Under constitutional jurisprudence, there are three categories of interactions between police and a citizen.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of

an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Fleet***, 114 A.3d 840, 845 (Pa.Super. 2015) (citation omitted).

"Both the United States and Pennsylvania Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. To be constitutionally valid, an arrest must be based on probable cause." ***Commonwealth v. Smith***, 979 A.2d 913, 916 (Pa.Super. 2009) (citation omitted), *appeal denied,* 993 A.2d 901 (Pa. 2010). Probable cause exists where the facts and circumstances within a police officer's knowledge are based upon reasonably trustworthy information and are sufficient to warrant one of reasonable caution in the belief that the suspect has committed or is committing a crime. In determining whether probable cause exists, this Court applies a totality of the circumstances test. ***Commonwealth v. Delvalle***, 74 A.3d 1081, 1085 (Pa.Super. 2013). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability,* and not a prima facie showing, of criminal activity." ***Commonwealth v. Thompson***, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (internal quotation marks and citations omitted, emphasis in original).

At the suppression hearing, the Commonwealth presented the testimony of Detective Steven Fink. Detective Fink testified he was a twenty-five year veteran of the Abington Police Department who had

investigated approximately four hundred burglaries in his career, several of which were multi-jurisdictional. N.T. Suppression, 6/19/15, at 4-5. In light of his experience, Detective Fink explained he was familiar with the standard mode of operation of burglaries and how perpetrators tent to commit those crimes. He gleaned this knowledge through both his personal observations and his interviews of individuals involved in burglaries. *Id*. at 5-6.

Detective Fink explained that on July 25, 2014, he was in the area of 2333 Geneva Avenue, Glenside, Montgomery County, where two burglaries had occurred in the preceding days. Detective Fink was aware that in each of those prior burglaries, the homeowners were at work when their homes were burglarized during the afternoon. In the burglary that occurred on July 22, 2014, entry to the home was gained through a slit in the window screen, a bedroom was ransacked, and laptops were stolen. In the second on July 23, 2004, a laptop, cash, and other items had been taken while the occupants were at work. *Id*. at 7-8.

Detective Fink observed Appellant walking through the neighborhood in the afternoon around lunchtime. Appellant was talking on a cell phone and spinning keys he had on a lanyard around his finger as he surveyed the homes around him. Detective Fink noticed Appellant had taken a circuitous route to arrive the house at 2333 Geneva Avenue, and when Appellant arrived there he knocked at the front door several times. Upon receiving no

response, Appellant ducked behind a bush to the right of the front door of the home. *Id*. at 10.

Detective Fink next saw Appellant take a white pair of gloves from his boots, place them on his hands, and proceed to manipulate the window. *Id*. at 12. Believing Appellant was attempting to break into the home, Detective Fink called for assistance. Suddenly, Appellant went to the front yard and appeared to wave to someone, although Detective Fink noticed no one was there. *Id*. at 13. Thereafter, Appellant proceeded to knock on the front door of another home. When he received no response, Appellant did nothing further on the property and continued his walk. *Id*. at 14. At that juncture, Detective Fink believed Appellant had become suspicious that he was being watched. When Appellant tried to board a SEPTA bus, Detective Fink placed him under arrest for trying to break into the home on Geneva Avenue. *Id*. at 15. Detective Fink remarked that this activity happened at the same time of day and in the same location of the previous burglaries and that the window in the front of the house next to the door was cut in an identical fashion. *Id*. at 13-14.

After placing Appellant under arrest, Detective Fink reviewed a Consent to Search Form with Appellant at which time he explained to Appellant his right not to consent to the search of his cell phone. Notwithstanding, Appellant gave Detective Fink permission to search the phone, and signed the consent form while Officer Fink looked on. *Id*. at 15-

16. Appellant did not limit the scope of his consent verbally or on the consent form. *Id*. at 17. In fact, the written Consent to Search form indicates in the description of what is to be searched portion "all data." *See* Commonwealth's Exhibit 2.

At the conclusion of the suppression hearing, the suppression court inquired as to whether the keys Appellant had in his possession had been seized. *Id*. at 31. Detective Fink indicated they had and explained that "[t]hey were the sharpest keys [he] had ever seen in [his] life." *Id*. at 31. Officer Fink further explained that the keys were "irregular" in that although they looked like house keys, they were "razor sharp." *Id*. When the suppression court questioned the purpose of such keys, Detective Fink surmised they may be utilized in splitting a screen. *Id*. at 31-32.

In support of its finding that Officer Fink testified credibly and had probable cause to arrest Appellant for attempted burglary on July 25, 2015, the suppression court reasoned as follows:

> Applying the law to the facts of this case, at the time of the arrest Detective Fink knew that [Appellant] knocked on the door at 2333 Geneva Avenue while looking all around and when he did not get an answer at the door, [Appellant] concealed himself behind a bush, put on gloves, which is very significant because it is consistent with someone who wants to commit a burglary and does not want to leave DNA or fingerprint evidence behind, and made motions with his hands while at the front window. In addition, these factors coupled with the detective's knowledge of the two previous burglaries that occurred in the same neighborhood just a few days prior and that the window screen of the window next to the front door was cut in one of those burglaries, which seemed identical as to what [Appellant] was doing at 2333 Geneva Avenue. The totality of these

- 13 -

circumstances dictates that there was abundant probable cause to arrest [Appellant].

Trial Court Opinion, filed 2/9/16, at 15. **See also** N.T., 6/19/15, at 36-38.

The bulk of Appellant's argument on this issue challenges the credibility of what he terms detective Fink's "subjective" observations, which he proceeds to view in a light most favorable to him. Brief for Appellant at 15-18, 21. However, upon our review of the suppression hearing testimony and corresponding exhibits, we conclude Detective Fink's assessment of the criminality of Appellant's behavior was not based upon mere subjective belief or conjecture. To the contrary, the suppression court's finding that Detective Fink had probable cause to arrest Appellant for attempted burglary is supported by the record and the totality of the circumstances, including Detective Fink's observations viewed in the light of his experience, support its legal conclusions.

Appellant's additional basis for suppression concerns the seizure of his cell phone. The suppression court remarked that while on appeal he generally challenges Detective Fink's seizure of his phone at the time of his arrest, in his suppression motion Appellant raised a much narrower argument that the consent he had provided to search his phone was limited to the day of his arrest only. Trial Court Opinion, filed 2/9/16, at 16. As this Court has observed,

> "[a]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may

- 14 -

be considered on appeal." ***Commonwealth v. Little***, 903 A.2d 1269, 1272–73 (Pa.Super. 2006); ***Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa.Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").

> It is well-settled law that motions to suppress evidence are decided prior to the beginning of trial. Moreover, pre-trial rulings on the suppression of evidence are final. In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available.
> ***Commonwealth v. Metzer***, 430 Pa.Super. 217, 634 A2d. 228, 233 (1993) (citations omitted).

> Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," Pa.R.Crim.P. 581(D), that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." ***Commonwealth v. McDonald***, 881 A.2d 858, 860 (Pa.Super. 2005). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. ***McDonald***, 881 A.2d at 860; ***Commonwealth v. Quaid***, 871 A.2d 246, 249 (Pa.Super. 2005) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest.").

***Commonwealth v. Freeman***, 128 A.3d 1231, 1241–42 (Pa.Super.

2015)(brackets in original).

At the outset of the suppression hearing, the suppression court asked the defense "to lay out with specificity and particularity on the record what issues they [sic] are moving to suppress." N.T. Suppression, 6/19/15, at 3. In response, defense counsel indicated that Appellant would be pursuing two issues, the first of which was the probable cause to arrest him. Counsel proceeded to admit that Appellant "gave consent to have his cell phone data looked at[,]" but explained that the "argument we are making is that that consent was only given for the limited purpose of his activities on the day that he was taken into custody, no other day." *Id*. at 3-4. However, in his Preliminary Concise Statement, Appellant asserted: "The [suppression] court erred in denying Appellant's suppression motion. There was no reasonable suspicion or probable cause to seize [A]ppellant's person or his property." *See* Preliminary Concise Statement, filed 1/20/16, at ¶ 6.(A).

Clearly, while at the suppression hearing Appellant challenged the breadth of the search of the cell phone data, he neither maintained his consent to search the same had been invalid nor did he posit that Detective Fink lacked probable cause to seize the phone at the time of arrest, as he asserts on appeal. Accordingly, we find his failure to advance this particular legal theory in the first instance before the suppression court renders this claim waived. *See Freeman*, *supra*. In light of the foregoing, Appellant's first issue affords him no relief.

Appellant next challenges the sufficiency and the weight of the evidence to sustain any of his burglary convictions. Initially we note that while in his Pa.R.A.P. 1925(b) statement Appellant conflates these issues, Preliminary Concise Statement, filed 1/20/16, at ¶¶ B, C, and at various points in his appellate brief continues to do so, we begin our discussion with Appellant's challenge to the sufficiency of the evidence and our well-established standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. **Commonwealth v. Estepp**, 17 A.3d 939, 943–44 (Pa.Super. 2011) (citing **Commonwealth v. Brooks**, 7 A.3d 852, 856–57 (Pa.Super. 2010)). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." (**Commonwealth v. Sanders**, 426 Pa.Super. 362, 627 A.2d 183, 185 (1993)). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.' " **Commonwealth v. Gainer**, 7 A.3d 291, 292 (Pa.Super.2010)

(quoting *Commonwealth v. Badman*, 398 Pa.Super. 315, 580 A.2d 1367, 1372 (1990)).

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014).

An individual commits the offense of burglary if, "with the intent to commit a crime therein, the person enters a building or occupied structure or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S.A. § 3502(a)(2).

Appellant posits "that he should not have been found guilty of any of the three burglaries because two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, one concluding in innocence and the other in guilt." Brief for Appellant at 24. Appellant's very admission that one interpretation of the evidence points to his guilt ignores the fact that this Court may not substitute our judgment for that of the fact finder which is free to assess witness credibility and believe all, part or none of the evidence. *Antidormi*, *supra*. Indeed, Appellant states he "does not disagree that much of what was said by Detective Williams, Detective Fink, Detective Minzola and the victims of the burglaries was reliable and/or uncontradicted and consistent[,]" yet he concludes that, notwithstanding, "the evidence was wholly insufficient as a matter of law to find Appellant guilty of the burglaries of July 22, 2014, and July 23, 2014. Brief for Appellant at 32-33. Upon our review of the record,

we find the properly admitted evidence at trial when viewed in a light most favorable to the Commonwealth as verdict winner was sufficient to support the jury's finding that Appellant was the perpetrator of those crimes.

Appellant's cell phone records revealed he was in the vicinity of the homes which were burglarized on July 22, 2014, and on July 23, 2014. In each instance, the perpetrator had entered the abode by making a small hole in the window screen of a front window to access the window latch. Officer Finch observed Appellant put on gloves and manipulate the front window of the home on Geneva Avenue on July 25, 2014, with what he later determined to be a razor-sharp keys. Significantly, Mr. Gratz testified that when he peered out of his bedroom window located on the first floor, he observed a young, very dark-skinned, tall man handling the window screen in the area of the window lock and believed he was attempting to gain entry to the residence. N.T. Trial, 9/10/15, at 56-57, 63. In addition, Detective Fink's interpretation of some of the jargon utilized in the text messages obtained from Appellant's cell phone suggested Appellant was planning to sell stolen laptops and had perfected the sale of one stolen in the July 22nd and July 23rd burglaries. *Id*. at 85-87.

Upon hearing this testimony, a jury properly may have inferred Appellant used the sharp keys he wore on a lanyard on July 25, 2016, to make the small holes in the window screens in the previous burglaries which

had occurred recently in the same neighborhood at the same time of day while the homes were unoccupied.

Appellant further contends the evidence was insufficient to sustain his attempted burglary conviction, for while he admitted to Detective Fink he had put on a pair of gloves and contemplated breaking into the home, he also indicated he abandoned his plan when he thought about his son and the risk he would be taking if he did so.  N.T. Trial, 9/10/15, at 92-94, 98-99. Appellant maintains the fact he left the premises and attempted to board a bus indicates he had no intention to commit a burglary, and if he at one time did, he renounced his intent to do so.  Brief for Appellant at 34.  In response to this argument, the trial court stressed that the jury as the finder of fact did not credit Appellant's renunciation defense and properly could have inferred that the reason he aborted his attempt to burglarize the 2333 Geneva Avenue home arose after he saw Mr. Gratz inside and sought to avoid apprehension.  Trial Court Opinion, filed 2/9/16, at 23-24.

Section 901(c) of the Crimes Code defines renunciation as a defense to criminal attempt as follows:

**(c) Renunciation.—**

(1) In any prosecution for an attempt to commit a crime, it is a defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

**(2) A renunciation is not "voluntary and complete" within the meaning of this subsection if it is motivated in whole or part by:**

**(i) a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal enterprise, or which render more difficult the accomplishment of the criminal purpose**; or

(ii) a decision to postpone the criminal conduct until another time or to transfer the criminal effort to another victim or another but similar objective.

18 Pa.C.S.A. § 901(c)(emphasis added). As stated previously, Detective Fink testified that he observed Appellant manipulate the first floor window at the Geneva Avenue home, abruptly stop his activity, turn, and wave to no one. Mr. Gratz indicated that from within his first floor bedroom window he observed Appellant attempting to gain entry to his home. In light of this evidence, the jury reasonably could have inferred that Appellant's renunciation was not voluntary but rather was motivated by his awareness that someone was inside the home and/or that he may have spotted by that resident or police; therefore, Appellant's sufficiency of the evidence claim fails.

Finally, Appellant posits the verdict was against the weight of the evidence.

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Ramtahal***, 613 Pa. 316, 33 A.3d 602 (2011). "An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." ***Id***., 613 Pa. at 327–28, 33 A.3d at 609. Moreover, a court's denial of a motion for a new trial based upon a weight of the evidence claim is the least

assailable of its rulings. ***Commonwealth v. Rivera***, 603 Pa. 340, 363, 983 A.2d 1211, 1225 (2009).

***In Interest of J.G.,*** 2016 WL 4521978, at *5 (Pa.Super. Aug. 26, 2016).

In addition,

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
> (1) orally, on the record, at any time before sentencing;
> (2) by written motion at any time before sentencing; or
> (3) in a post-sentence motion.
> Pa.R.Crim.P. 607(A).
>
> A post-sentence motion challenging the weight of the evidence "will preserve no issue for appellate review unless the motion goes on to specify *in what respect* the evidence was insufficient, or *why* the verdict was against the weight of the evidence."

***Commonwealth v. Holmes***, 461 A.2d 1268, 1270 (Pa. Super. 1983) (emphasis in original).

Herein, Appellant filed a timely post-sentence motion challenging the weight of the evidence to sustain his burglary convictions which he asserted relied upon only "cell phone towers and emails and text messages." Appellant further maintained the weight of the evidence was such that the trial court should have found he renounced his intention to commit the attempted burglary. ***See*** Motion for Reconsideration and Motion to Modify Sentence at ¶ 1. However, Appellant's 1925(b) statement lacks specificity regarding his weight claim pertaining to his burglary convictions. It is relevant that upon noting the vagary in Appellant's Pa.R.A.P. 1925(b) statement, the trial court stated its belief that:

[Appellant's] argument set forth in his 1925(b) statement, i.e., the Commonwealth failed to prove that he committed either of the completed burglaries, really is a sufficiency challenge despite the language challenging the weight of the evidence. Therefore, this claim will be addressed accordingly.

Trial Court Opinion, filed 2/9/16, at 18. As a result, he arguably has waived this claim. *See Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002) (vague weight claim in Rule 1925(b) statement waives claim).

To the extent Appellant may be deemed to have preserved this issue for our review, the argument he sets forth in his appellate brief merely summarizes the evidence which he contends was insufficient to sustain his burglary convictions. Appellant baldly adds that the trial court's suggestion that Appellant committed the burglaries on July 22 and 23, 2014, based upon cell phone "triangulation" is shocking as is its conclusion that he committed the two burglaries in light of those text messages. Appellant highlights that Detective Minzola admitted on cross-examination he could not prove Appellant possessed the cell phone or was at the burglarized residences on those days on July 22 and 23 of 2014. Brief for Appellant at 42.[3] In addition, he again raises his renunciation defense upon which he relied to support his sufficiency of the evidence challenge to support his

_____

[3] Importantly, the trial court accepted Detective Minzola as an expert in the field of cellular telephone records analysis, and Appellant did not object to his testifying in this capacity. N.T., 9/10/15, at 148.

argument his attempted burglary conviction was contrary to the weight of the evidence.

A review of the trial court's Rule 1925(a) Opinion reveals it did not base its opinion on the limited factors Appellant states. Rather, it found that because the record as a whole supported the jury's verdict, it did not shock the court's sense of justice. Trial Court Opinion, filed 2/9/16, at 26.

> Appellant merely asks this Court to reweigh the evidence and find that which inculpated him was incredible. This we cannot do. ***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa.Super. 2014). "It was within the province of the jury to make credibility determinations in this regard, and this Court will not reweigh such credibility determinations on appeal. "A jury decision to credit certain evidence and reject other testimony is appropriate; therefore, the trial court did not abuse its discretion in concluding that its sense of justice was not shocked by the verdict." ***Commonwealth v. Sander****s,* 42 A.3d 325, 331 (Pa.Super. 2012).

***Commonwealth v. Stiles***, 2016 WL 4035610, at *11 (Pa.Super. July 19, 2016).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/18/2016</u>

- 24 -